UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GERALD BLACK,

    Petitioner,

vs.

MICHAEL S. EVANS, Warden,

    Respondent.

No. C 05-0250 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities, and has lodged exhibits with the court. Petitioner has not filed a traverse. For the reasons set out below, the petition is denied.

## BACKGROUND

Petitioner was convicted by a jury of battery by a prisoner on a non-confined person *See* Cal. Penal Code § 4501.5. He received a sentence of twenty-five years to life pursuant to the Three Strikes law. *See* Cal. Penal Code § 1170.12. He does not dispute the following facts, which are excerpted from the opinion of the California Court of Appeal:

> Alexandra Simons testified that she was employed as a medical technical assistant (MTA) by Salinas Valley State Prison. Defendant's attorney stipulated that defendant was an inmate at the prison. Simons indicated that she was a licensed vocational nurse and her position involved providing medical care to inmate. On August 7, 2000, she had been working at the prison as a MTA for two months.
>
> Simons indicated that, on August 7, 2000, a correctional officer brought inmate Gerald Black, identified in court as defendant, to a chair where "pre-vitals," vital signs such as weight and blood pressure, were taken. Simons stated that she was wearing a standard issue, tan colored "California

Department of Corrections medical smock." Defendant sat in a chair facing Simons, who was also seated, across a desk. He laid out his left arm for Simons to take his blood pressure. Simons stated that she put a blood-pressure cuff on defendant's upper left arm and placed her stethoscope on the inside of his elbow. According to Simons, as she was administering the blood pressure and heart beat checks, which takes a total of a minute or two, Simon's torso and defendant's torso were about his arm's length apart and no part of Simon's body was touching defendant's arm.

Simons testified that, at some point during this procedure, defendant extended his hand forward and his left thumb and his forefinger contacted her left breast for a second. Simons thought that defendant had moved his hand about six inches forward to make contact with her breast. She stated that she moved back in reaction because she was uncomfortable. She testified that she stood up because she was done with the procedure and because she "was a little shocked." She stated that as she "went to get up [defendant] grabbed again and got the edge of [her] smock." Simons indicated that she felt offended and a little nervous. Simons testified that she did not bump into him, there was no possible way the touching could have been an accident, she believed the touching was intentional, and it was her opinion that defendant moved his hand on purpose in order to touch her. She confirmed that the incident occurred within the state prison.

Simons testified that she immediately reported the incident to the correctional officer assisting her. She recalled that, during a subsequent contact with defendant in the prison, defendant told her that he and his attorney would make her look really bad and she should not testify against him.

Defendant testified on his own behalf. He claimed that his left arm was restrained and he did not touch Simon's breast. However, he admitted that his hand accidentally came in contact with her left breast and explained that it happened because "[h]er breasts was [*sic*] out far enough in the smock she was wearing where [his] hand –" "[a]ccidentally touched her."

Defendant confirmed that it was his testimony that the touching of Simon's breast was an accident. Defendant recalled that Simons "extended herself towards [his] hand" and "[h]er chest was sticking out this far when she was leaning over to do the blood pressure." His testimony was that his palm was lying flat the entire time and that his palm and thumb never moved.

Defendant completely denied grabbing the smock. When asked why Simons would say that he grabbed her smock, defendant replied that he felt that "she [had] been coached to say what she want [*sic*] to say up on the stand."

Defendant acknowledged that he was in custody in Salinas Valley State Prison for sales of cocaine base and had twice before served time in prison for assault with intent to commit rape. He agreed that those assaults were not accidental.

Defendant indicated again that Simons was mistaken in her belief that he intentionally grabbed her breast. He further testified that Simons was actually lying when she claimed he grabbed her smock and lying when she suggested that he tried to intimidate her subsequent to the August 7 incident.

He stated that there had been no contact between them since the incident. Resp't Ex. 6 (Cal. Ct. of Appeal Op.) at 2-3.

## STANDARD OF REVIEW

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

///

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

## DISCUSSION

As grounds for habeas relief, petitioner asserts that: (1) the trial court's failure to instruct the jury that accident is a defense to battery by a prisoner violated his due process rights; (2) the trial court's failure to give a unanimity instruction violated his due process rights; (3) the evidence was insufficient to prove that he was confined in a California state prison at the time of the offense; (4) he was denied due process because the court failed to advise him of his right to confrontation and against self-incrimination before accepting his stipulation to his two prior strike convictions; (5) his sentence constitutes cruel and unusual punishment; and (6) the state's omission of the written jury instructions from the appellate record deprived him of his right to appeal and to effective assistance of appellate counsel.

### I.   Failure to Give Accident Instruction

Petitioner claims that the trial court's failure to instruct the jury that accident is a defense to battery by a prisoner violated his due process rights. He argues that the trial court should have instructed the jury pursuant to CALJIC No. 4.45, which provides:

> When a person commits an act or makes an omission through misfortune or by accident under circumstances that show [no] [] [criminal intent []or purpose,] [] [he] [she] does not thereby commit a crime.

Failure to instruct on the defense theory of the case violates due process if "'the theory is legally sound and evidence in the case makes it applicable.'" *Clark v. Brown*, 450 F.3d 898, 904-05 (9th Cir. 2006) (quoting *Beardslee v. Woodford*, 358 F.3d 560, 577 (9th Cir. 2004)). However, a state trial court's refusal to give a jury instruction does not alone raise a cognizable ground for relief in a federal habeas corpus proceeding. *Dunckhurst v.*

4

*Deeds*, 859 F.2d 110, 114 (9th Cir. 1988) (citation omitted).  The error "must so infect the entire trial that the defendant was deprived of his right to a fair trial guaranteed by the due process clause of the fourteenth amendment." *Id.*  Whether a constitutional violation has occurred depends on the evidence in the case and the overall instructions given to the jury. *Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir. 1995).  A defendant is not entitled to have jury instructions raised in his or her precise terms where the given instructions "adequately cover" the defense theory. *United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir. 1996); *see also United States v. Tsinnijinnie*, 601 F.2d 1035, 1040 (9th Cir. 1979).

"An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  Thus, the burden on a habeas petitioner is "especially heavy" where, as here, the alleged error involves the failure to give a particular instruction. *Id.*

If constitutional error is found, the court must also determine that the error "'had substantial and injurious effect or influence in determining the jury's verdict'" before granting habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  In other words, the error must have resulted in "actual prejudice." *Id.*

The California Court of Appeal found that the trial court erred in failing to instruct the jury regarding the defense of accident.  Resp't Ex. 6 at 5.  It also found, however, that the error was harmless, for the trial court properly gave three other instructions which compensated for the omission of CALJIC No. 4.45.  *Id.* at 4-6.  First, the trial court instructed the jury that in order to prove a violation of California Penal Code § 4501.5, the prosecution had to prove four elements: "one, a person used force or violence upon [the victim]; two, the use of force or violence was *willful* and unlawful; three, the person who used force or violence was at the time confined in a state prison of this state; and number four, the person upon whom the force or violence was inflicted was not at the time confined within that prison." Resp't Ex. 2 (Reporter's Transcript) at 259 (italics added).  Next, the trial court defined the word "willfully" for the jury as follows: "The word willfully when applied

to the intent with which an act is done or omitted means with a purpose or willingness to commit the act or to make the omission in question." *Id.* at 260. Finally, the trial court instructed the jury that a violation of § 4501.5 requires "a joint union or operation of act or conduct and general criminal intent." *Id.* It continued: "General intent does not require an intent to violate the law. When a person intentionally does that which the law declares to be a crime, they are acting with general criminal intent even though they may not know that their conduct or act is unlawful." *Id.* Citing the prejudice standards of *Chapman v. California*, 386 U.S. 18, 24 (1967), *People v. Watson*, 46 Cal. 2d 818, 836 (1956), and *People v. Sedeno*, 10 Cal. 3d 703, 721 (1974), the court of appeal concluded that "[t]here was no prejudice to defendant since the evidence supporting a finding of accident was necessarily rejected by the jury when it convicted defendant." Resp't Ex. 6 at 6.

Here the state appellate court disposed of the instructional error as harmless under an appropriate standard of review. *See Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993) (*Chapman* provides proper harmless error standard for direct appeals of criminal convictions). Therefore, the question is whether the state court's harmlessness holding was objectively unreasonable. *See Medina v. Hornung*, 386 F.3d 872, 878 (9th Cir. 2004).

The court of appeal correctly recognized that the properly given instructions regarding the elements of the crime charged, the definition of willfulness, and the requirement of concurrence of conduct and intent "adequately cover[ed]" the defense theory of the case. *See Del Muro*, 87 F.3d at 1081. From these other instructions, the jury knew that it in order to convict petitioner of the crime of battery by a prisoner, it had to find that petitioner "purpose[ly]" touched the victim. *See* Resp't Ex. 2 at 260. Because petitioner could not have acted both purposely and accidentally, no reasonable juror could have found the elements of the crime satisfied and credited petitioner's accident argument. It therefore cannot be said that missing instruction "so infect[ed] the entire trial that the defendant was deprived of his right to a fair trial guaranteed by the due process clause of the fourteenth amendment." *See Dunckhurst*, 859 F.2d at 114.

///

For these reasons, the court of appeal's harmlessness holding was not objectively unreasonable. *See Medina*, 386 F.3d at 878. Petitioner is not entitled to federal habeas relief on this claim.

## II.     Failure to Give Unanimity Instruction

Petitioner contends that his due process rights were violated by the trial court's failure to instruct the jury that under California law all jurors must unanimously agree on the particular criminal act they believe the defendant committed. According to petitioner, because two separate touchings could have constituted the battery, the touching of the breast and the touching of the smock, such an instruction was required.

Criminal defendants in state court have no federal constitutional right to a unanimous jury verdict. *See Apodaca v. Oregon*, 406 U.S. 404, 410-12 (1972); *Johnson v. Louisiana*, 406 U.S. 356, 359-63 (1972). In addition, due process does not require an instruction that the jury unanimously agree about which piece of evidence supports each charge. The Supreme Court has held that "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackman, J, concurring); *see also Schad v. Arizona*, 501 U.S. 624, 631-32 (1991). Accordingly, the state court's rejection of petitioner's unanimity claim on state law grounds cannot be considered a violation of federal due process. Petitioner is not entitled to federal habeas relief on this claim.

## III.    Sufficiency of the Evidence

California Penal Code § 4501.5 provides that "[e]very person confined in a state prison of this state who commits a battery upon the person of any individual who is not himself a person confined therein shall be guilty of a felony . . . ." Petitioner claims that the evidence was insufficient to prove that he was confined in a California state prison at the time of the offense.

///

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim which, if proven, entitles him to federal habeas relief. *Jackson v. Virginia*, 443 U.S. 307, 321, 324 (1979).

A federal court reviewing collaterally a state court conviction does not determine whether the evidence established guilt beyond a reasonable doubt. *Id.* at 318-19; *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). It determines only "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The court should take into consideration all of the evidence presented at trial. *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006). If confronted by a record that supports conflicting inferences, the court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. A jury's credibility determinations are entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, *Jackson* does not permit a federal habeas court to revisit credibility determinations. *Id.* at 957-58.

After 28 U.S.C. § 2254(d), a federal habeas court applies the standards of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). The court must ask whether the operative state court decision "reflected an 'unreasonable application of' *Jackson* and *Winship* to the facts of the case." *Id.* at 1275 (quoting 28 U.S.C. § 2254(d)(1)).

The California Court of Appeal rejected petitioner's insufficient evidence claim, finding that "[t]he jurors could logically conclude, from the stipulation that defendant was an inmate at the Salinas Valley State Prison and from the evidence that Simons worked at

8

Salinas Valley State Prison, the incident occurred 'within the state prison,' and Simons was wearing a 'California Department of Corrections medical smock,' that defendant Black was confined in a California state prison rather than in a state prison of some other state." Resp't Ex. 6 at 8.

This decision did not reflect an "unreasonable application of" *Jackson* and *Winship*. *See Juan H.*, 408 F.3d at 1274. It is true that the prosecution presented no direct evidence showing that Salinas Valley State Prison is a California state prison. But a federal habeas court evaluating an insufficient evidence claim must take into consideration "all of the evidence presented at trial," *see LaMere*, 458 F.3d at 882, and must "view[] the record in the light most favorable to the prosecution," *see Jackson*, 443 U.S. at 319. From the testimony that the victim was employed at Salinas Valley State Prison, Resp't Ex. 2 at 26, that petitioner was an inmate at Salinas Valley State Prison, *id.* at 41, 55, and that the victim was wearing a California Department of Corrections smock the day the incident occurred, *id.* at 40, "*any* rational trier of fact" could have found beyond a reasonable doubt that petitioner was "confined in a state prison of this state." *See Jackson*, 443 U.S. at 319; § 4501.5. Petitioner is not entitled to federal habeas relief on his insufficient evidence claim.

**IV.     Right to Confrontation and Against Self-Incrimination**

Petitioner claims that he was denied due process because the trial court failed to advise him of his right to confrontation and against self-incrimination before accepting his stipulation to his two prior convictions for assault with intent to commit rape.

The right to confrontation applies when sentencing is dependent upon a new finding of fact that was not an element of the offense for which the defendant was convicted. *See Specht v. Patterson*, 386 U.S. 605, 609-10 (1967). Therefore, confrontation applies when a defendant has been charged with a sentence enhancement which requires proof of the fact of a prior conviction. *See Camillo v. Armontrout*, 938 F.2d 879, 880 (8th Cir. 1991).

The admission to a prior offense for sentencing purposes is the functional equivalent of a guilty plea and must comport with the same protective measures imposed on the

acceptance of a guilty plea. *Bernath v. Craven*, 506 F.2d 1244, 1245 (9th Cir. 1974). The long-standing test for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Parke v. Raley*, 506 U.S. 20, 29 (1992) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Determining whether the plea was voluntary and intelligent requires a review of "all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970). The totality of the circumstances includes "both the defendant's subjective state of mind and the constitutional acceptability of the external forces inducing the guilty plea." *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007) (internal quotations and citations omitted).

The California Court of Appeal concluded that "[t]he record in this case affirmatively demonstrates that the plea was voluntary and intelligent under the totality of circumstances." Resp't Ex. 6 at 12. The court cited the fact that petitioner opted to testify on his own behalf during the trial, admitted to the jury on cross-examination that he suffered two prior convictions for assault with intent to commit rape, observed his own counsel cross-examine the prosecution's chief witness, requested a court trial on the three strikes allegation, and was represented by counsel at the court trial. *Id.* at 11-12. Moreover, the appellate court cited the strong factual basis for the stipulation in the prosecution's exhibits, which were in the process of being admitted into evidence when petitioner agreed to stipulate. *Id.* at 12.

The court of appeal's conclusion was neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court authority. *See* 28 U.S.C. § 2254(d). The circumstances surrounding petitioner's plea suggest that it represented a voluntary and intelligent choice among the alternative courses of action open to him. *See Brady*, 397 U.S. at 749; *Parke*, 506 U.S. at 29. First of all, the record indicates that petitioner knew that he had a right to confront witnesses on the issue of his prior convictions. The trial judge told petitioner that he had "a right to a jury trial in which 12 jurors would listen to the evidence concerning your prior convictions or special allegations

10

pursuant to Penal Code Section 1170.12(c)(2)." Resp't Ex. 2 at 8. Petitioner chose instead to "have a Court trial on the truthfulness and the proof concerning the prior convictions." *Id.* This description of the court trial as examining "the truthfulness and the proof" of the priors must have indicated to petitioner that, despite having waived his right to a jury, he would still have the opportunity to challenge the prosecution's evidence and present his own proof.

The record also indicates that petitioner knew or should have known that admitting the priors would have three strikes consequences. At the beginning of the jury trial, the court informed petitioner that the amended information alleging two "prior serious or violent felonies . . . enhances the potential punishment in this particular case . . . to a life sentence with a 25-year minimum." *Id.* at 5. Petitioner acknowledge that he understood. *Id.* Later, during the separate court trial on the priors, the prosecutor referred to petitioner's earlier convictions as "strike priors" and informed the court that both qualified "as prior strikes pursuant to the three strikes law." *Id.* at 504. Petitioner agreed to stipulate shortly after the prosecutor made this statement. *Id.* at 505.

Additionally, the record suggests that petitioner made the decision to stipulate only after appraising the weight of the evidence against him. The prosecutor was in the process of entering certified abstracts of both prior convictions into evidence when defense counsel informed the court of petitioner's decision. *Id.* at 504-05. Petitioner has not pointed to any evidence or arguments that he would have used to challenge this proof if he had been directly informed of his right to confrontation and against self-incrimination. In fact, his own testimony on the witness stand corroborated the prosecution's evidence. On direct examination, he stated that he had been imprisoned twice before for assault. *Id.* at 55. On cross-examination, he admitted that both assaults were specifically assault with intent to commit rape and that neither assault was accidental. *Id.* at 58.

On this record, the California Court of Appeal reasonably concluded that petitioner's plea represented a voluntary and intelligent choice among the alternative courses of action open to petitioner. *See* 28 U.S.C. § 2254(d); *Parke,* 506 U.S. at 29. Petitioner is not

entitled to habeas relief on this claim.

## V.     Cruel and Unusual Punishment

Petitioner claims that his sentence of twenty-five years to life constitutes cruel and unusual punishment. The Eighth Amendment to the United States Constitution provides that there "shall not be . . . cruel and unusual punishment inflicted." U.S. Const. amend. VIII. "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)); *see also Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) ("A gross disproportionality principle is applicable to sentences for terms of years."). The Eighth Amendment does not preclude a state from making a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime, as may occur under a recidivist sentencing statute. *Ewing*, 538 U.S. at 25, 29-30. In determining whether a sentence is grossly disproportionate under a such a statute, the court looks to whether the "extreme sentence is justified by the gravity of [the individual's] most recent offense and criminal history." *Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004).

In *Andrade*, the Supreme Court upheld a Three Strikes sentence of two consecutive twenty-five-to-life terms for a recidivist convicted of stealing approximately $150 worth of videotapes. *Andrade*, 538 U.S. at 66, 77. Andrade had a criminal history of petty theft, burglary, and transportation of marijuana. *Id.* at 66. Similarly, in *Ewing*, the Court upheld a three strikes sentence of twenty-five years to life for a repeat felon convicted of felony grand theft of three golf clubs worth nearly $1,200. *Ewing*, 538 U.S. at 18-19, 30-31. Ewing had a criminal history of theft, battery, burglary, possession of drug paraphernalia, illegal firearm possession, robbery, and trespass. *Id.* at 18-19. By contrast, the Ninth Circuit in *Ramirez* held that a Three Strikes sentence of twenty-five years to life on petty theft with prior conviction was grossly disproportionate to the crime. *Ramirez*, 365 F.3d at 767. Ramirez's prior criminal history consisted of two convictions for second-degree

robbery obtained through a single guilty plea, for which his total sentence was one year in county jail and three years of probation. *Id.* at 768. The robberies were "nonviolent" shoplifting crimes in which the "force" used was when a third party drove the getaway car over the foot of a grocery store security guard and when Ramirez pushed a K-mart security guard out of his way as he fled the store. *Id.*

Here, petitioner was convicted of battery by a prisoner on a non-confined person, a crime arguably more serious than the thefts in *Andrade* and *Ewing*. In determining whether a sentence is grossly disproportionate under a recidivist sentencing statute, however, courts look not only at the most recent offense, but also at the petitioner's criminal history. *Ramirez*, 365 F.3d at 768. Petitioner's criminal history is extensive. As a juvenile, he was on Juvenile Probation for truancy, running away from home, and two residential burglaries, and was committed to the California Youth Authority. Resp't Ex. 1 (Clerk's Transcript) at 72. As an adult, he committed five felonies and three misdemeanors. *Id.* at 72-73; Resp't Ex. 2 at 505-06. The felonies that served as his first two strikes were separate incidents of assault with intent to commit rape, a much more serious crime than the nonviolent shoplifting priors in *Ramirez*. *See* Resp't Ex. 2 at 505-06; *Ramirez*, 365 F.3d at 768. Petitioner also has a history of poor performance on probation and parole. *See* Resp't Ex. 1 at 73.

During his current prison term, petitioner has continued to misbehave. Between 1991 and 1999, he received fourteen 115 rule violations, two of which were for sexual misconduct in the presence of a female correctional officer. *Id.* at 71-72. Petitioner's probation report notes that Salinas Valley State Prison officials "believe [petitioner] has a pattern of sexual misconduct, and consider him to be 'a problem' due to his prior record, previous 115s, and the instant offense." *Id.* at 75-76.

That neither petitioner's CYA commitment, his multiple prison commitments, nor the various punishments he has received for 115 violations deterred him from committing the current offense supports the state appellate court's conclusion that petitioner's "sentence does not give rise to an inference of gross proportionality." Resp't Ex. 6 at 21. The state

court's rejection of petitioner's Eighth Amendment claim was therefore not contrary to, nor an unreasonable application of, clearly established Supreme Court authority. *See* 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on this claim.

**VI.  Incomplete Appellate Record**

The appellate record in this case does not include written jury instructions. *See* Resp't Ex. 1 at 1-37. The clerk was unable to locate them. Resp't Ex. 1 Vol. II (Supplemental Clerk's Transcript) at 8. Petitioner claims that the state's omission of the written instructions deprived him of his right to appeal and to effective assistance of appellate counsel.

To satisfy the due process requirements of the Fourteenth Amendment, the state must provide a defendant with a "record of sufficient completeness" to permit "proper consideration of [the defendant's] claims" and "adequate and effective appellate review." *See Mayer v. Chicago*, 404 U.S. 189, 193-94 (1971); *Draper v. Washington*, 372 U.S. 487, 499 (1963); *Griffin v. Illinois*, 351 U.S. 12, 20 (1956). In *Madera v. Risley*, 885 F.2d 646 (9th Cir. 1989), the court adopted two criteria as relevant to the determination of need for the missing record: (1) the value of the transcript to the defendant and (2) the availability of alternative devices which would fulfill the same function. *Id.* at 648 (quoting *Britt v. North Carolina*, 404 U.S. 226, 227 & n.2 (1971)). A habeas petitioner also must establish prejudice from the lack of recordation to be entitled to habeas corpus relief. *See id.* at 649.

The California Court of Appeal found that petitioner "failed to show that the appellate record was inadequate to permit meaningful appellate review." Resp't Ex. 6 at 25. The court noted that the record does not establish that the jury actually considered the written instructions in its deliberations. *Id.* at 22. Although the trial judge told the jury that the jury instructions would be made available in written form if the jury so requested, *see* Resp't Ex. 2 at 251, the jury never made such a request. The appellate court also noted that petitioner failed to show that the certified reporter's transcript of the oral instructions was an inadequate substitute for the written instructions, Resp't Ex. 6 at 22, pointing out that it was able to determine the merits of all issues raised on appeal, *id.* at 25. Finally, the court

14

concluded that petitioner failed to show prejudice. *Id.*

The court of appeal's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court authority. *See* 28 U.S.C. § 2254(d). Under the first *Madera* factor, the "value" of the written jury instructions to petitioner's case appears small. *See Madera*, 885 F.2d at 648. As the court of appeal noted, there is no evidence that the jury actually considered the written instructions during its deliberations. It is therefore unlikely that petitioner would have been able to make a strong claim on appeal based on the written instructions. Under the second *Madera* factor, petitioner has failed to show that the certified transcript of the oral instructions do not "fulfill the same function" as the written instructions. *See Madera*, 885 F.2d at 648. He has not claimed, for example, that the transcript of the oral instructions or the oral instructions themselves were incomplete or inaccurate. For essentially the same reasons, petitioner has failed to show prejudice. *See id.* at 649. Petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 30, 2008.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.05\BLACK250.RUL.wpd